## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

TYWAN A. POOLE,          )
                               )
           Movant,        )
                               )
vs.                         ) Civil No.  15-00985-CV-W-FJG
                               ) Crim. No.13-00031-CR-W-FJG
UNITED STATES OF AMERICA,  )
                               )
           Respondent.    )

## <u>ORDER</u>

On December 7, 2015, Poole filed a Motion to Vacate, Set Aside or Correct his sentence (Doc. # 1). In his Motion, the only ground raised was that trial counsel was ineffective for failing to file a notice of appeal, despite his request that she do so.  No other grounds for relief were asserted.  On April 12, 2016, the Court issued an Order stating that an evidentiary hearing was necessary before issuing a ruling on movant's §2255 motion. The Court stated that counsel had been appointed to represent petitioner at the hearing.  The Evidentiary Hearing was scheduled for June 29, 2016.  On June 27, 2016, Poole's counsel filed a motion to continue the hearing stating that after meeting with Poole, it became apparent that he wished to raise several additional issues related to ineffective assistance of counsel and potentially other issues as well.  Counsel requested an extension of time to file an amended §2255 motion.  The Court will now consider Poole's Amended §2255 motion as well as the other pending motions: Motion to Terminate Counsel (Doc. # 30); Motion for Discovery (Doc. # 33); Motion for Extension of Time to File Reply (Doc. # 35); Motion to  Vacate (Doc. # 38) and Motion for Summary Judgment (Doc. # 39).

# I.    BACKGROUND

On February 1, 2013, a grand jury returned a twelve count indictment against Poole. Poole was charged with conspiracy to distribute 100 grams or more of a mixture or substance containing a detectable amount of phencyclidine (PCP) in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and 846 (Count One); four counts of possession with intent to distribute 10 grams or more of a mixture or substance containing a detectable amount of PCP in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Counts Four, Seven, Ten and Eleven); three counts of possession with intent to distribute some amount of a mixture or substance containing a detectable amount of PCP in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Counts Two, Six and Nine) and four counts of knowingly possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Counts Three, Five, Eight and Twelve). A Superseding Indictment was filed on August 27, 2014, reducing Poole's charges to six counts.   On October 3, 2014, Poole pled guilty to Counts One and Two of an Information charging him with possession with intent to distribute 10 grams or more of PCP, in violation of 21 U.S.C.§§ 841(a)(1) and (b)(1)(B) and being a drug user in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a), pursuant to a binding written plea agreement as per Rule 11(c)(1)(C).   On July 16, 2015, in accordance with the plea agreement, Poole was sentenced to the agreed upon sentence of 96 months on Count One and 60 months on Count Two, to run concurrently, for a total sentence of 96 months.  Poole did not file a direct appeal of his conviction or sentence.  On December 7, 2015, Poole filed a pro se motion for post-conviction relief, asserting that his attorney was ineffective for failing to file a notice of appeal.

## II. STANDARD

28 U.S.C. § 2255 provides, in part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

The district court must hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. "Accordingly, a claim may be dismissed without an evidentiary hearing if the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." Shaw v. United States, 24 F.3d 1040, 1043 (8th Cir. 1994) (citing Larson v. United States, 905 F.2d 218, 220-21 (8th Cir. 1990), cert. denied, 507 U.S. 919, 113 S.Ct. 1278, 122 L.Ed.2d 672 (1993)).

Our analysis of the ineffectiveness claims is governed by Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to succeed on an ineffectiveness claim, Poole must show "both deficient performance by counsel and prejudice." Id. at 687-88. In Johnson v. U.S., 860 F.Supp.2d 663 (N.D.Iowa 2012), the Court stated:

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland], 466 U.S. at 688, 104 S.Ct. 2052. . . . The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S.Ct. 2052. Harrington v. Richter, 562 U.S. 86, 104, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011); Premo v. Moore, 562 U.S. 115, 121-122, 131 S.Ct. 733, 739, 178 L.Ed.2d 649 (2011) (quoting Richter). Also, the court " 'must "judge the reasonableness of counsel's challenged conduct on the facts of the

3

particular case, viewed as of the time of counsel's conduct." ' " King [v. United States,595 F.3d 844,] 852–53 (quoting Ruff v. Armontrout, 77 F.3d 265, 268 (8th Cir.1996), in turn quoting Strickland, 466 U.S. at 690, 104 S.Ct. 2052). There are two substantial impediments to making the required showing of deficient performance. First, " '[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.' " United States v. Rice, 449 F.3d 887, 897 (8th Cir.2006) (quoting Strickland, 466 U.S. at 690, 104 S.Ct. 2052). Second, "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " Id. (quoting Strickland, 466 U.S. at 689, 104 S.Ct. 2052); Davis v. Norris, 423 F.3d 868, 877 (8th Cir.2005) ("To satisfy this prong [the movant] must overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance.")

Id. at 741. In United States v. Orr, 636 F.3d 944 (8th Cir.) cert. denied, 865 U.S. 1063 (2011), the Court stated, "strategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after a less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 952 (quoting Strickland, 466 U.S. at 690-91, 104 S.Ct. 2052). However, as noted in Armstrong v. Kemna, 534 F.3d 857 (8th Cir. 2008), "[o]n the other hand, strategic choices 'resulting from lack of diligence in preparation and investigation [are] not protected by the presumption in favor of counsel.'" Id. at 864-65 (quoting Kenley v. Armontrout, 937 F.2d 1298,1304 (8th Cir.) cert. denied, 502 U.S. 964 (1991)).

### III. DISCUSSION

**A. Ground One – Failure to File Notice of Appeal**

In Witthar v. United States, 793 F.3d 920 (8th Cir. 2015), the Court stated:

[a]n attorney's failure to file a requested appeal automatically satisfies the deficient-performance prong of Strickland because it is professionally unreasonable. . . .This is so because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel, and counsel's failure to file reflects inattention to the defendant's wishes. . .

4

.And if an attorney fails to honor this request, the defendant forfeits her right to an appellate proceeding. . . .No showing of prejudice is required in this unique circumstance. . . .The court does not require an affirmative showing on the second prong of <u>Strickland</u>. Instead, prejudice is presumed.

<u>Id</u>. at 922-23 (internal citations and quotations omitted). The Court went on to note that "[w]hen a district court receives conflicting statements – one from a §2255 petitioner and one from her former counsel – the court cannot 'mak[e] a factual determination based on the relative credibility of [these individuals] without the benefit of an evidentiary hearing.'" <u>Id</u>. at 923 (quoting <u>Franco v. United States</u>, 762 F.3d 761, 765 (8th Cir. 2014)).

In the instant case, Poole alleged that his former counsel, Laine Cardarella "put off and totally disregarded my repeated efforts for counsel to provide a notice of appeal on my behalf. I further asked said counsel if I needed to file a notice of appeal pro-se or would she file a notice of appeal on my behalf?" (Doc. # 1). In opposition, the Government provided an Affidavit from Ms. Cardarella stating:

I specifically remember a conversation in which I advised Mr. Poole that he should not plead guilty at the district court in hopes of winning some appeal at the circuit court; he should try to win at the district court. Immediately prior to his sentencing hearing, Mr. Poole did ask me about an appeal. At sentencing, Mr. Poole received the agreed upon sentence of 8 years. Afterwards, we did not discuss an appeal. I have reviewed the letter which I sent to Mr. Poole on July 20, 2015. In the letter I reminded Mr. Poole that he has asked about an appeal before the sentencing hearing. I asked him if he wished for me to file a notice of appeal on his behalf, and if so to let me know in writing. In the letter, I advised Mr. Poole that I would be out of town but that I would direct my secretary to review my mail for letters from him and for any directive from him to file a notice of appeal. I have reviewed my file for any correspondence I received from Mr. Poole after July 20, 2015. I do not have any correspondence from him in which he directs me to file a notice of appeal. I do have a letter dated October 1, 2015 (received October 13) in which he asked for copies of several documents including docket sheets and transcripts. I provided to him everything that we had that I was able to send. In the letter, Mr. Poole asked if I would file a notice of appeal for him or if he would need to file it pro se. He acknowledged that we had spoken "previously while the notice

5

to appeal was still valid." I failed to answer his question about a notice of appeal in the response I sent on October 21, 2015 but I do know that by then any appeal was time barred.

(Doc. # 10-1, pp. 1-2). In the instant case, as there are conflicting statements between Poole and Ms. Cardarella regarding exactly what was said regarding filing a notice of appeal, the Court finds that an evidentiary hearing is necessary to resolve this issue. The Court will hold an evidentiary hearing on **August 9, 2017** at **1:00 p.m.**

## B. Ground Two – Destruction of Evidence

Poole alleges that a backpack containing documents, contracts and music CD's related to his business as a music producer were seized by the Government. Poole states that he wanted to use these items in his defense to show that he is a legitimate businessman. Poole asked Cardarella to investigate and locate the backpack and its contents. He alleges that she shared with the prosecution his plan to use the backpack and its contents in his defense. He also argues that Cardarella failed to challenge the destruction of the backpack and its contents when it was discovered that the evidence had been destroyed. He also believes that the destruction of the evidence amounted to prosecutorial misconduct and he could have challenged the issue on direct appeal, but for counsel's failure to file a notice of appeal.

In opposition, the Government provided a supplemental affidavit from Cardarella. In the affidavit, Cardarella states:

The police reports do indicate that a backpack was located in the rear of the vehicle and that it was inventoried. The inventory of the vehicle, when towed, does not include a backpack. I presumed, therefore, that the backpack was taken into evidence. When I went to the police department to review the evidence, I recall that there was no backpack. As I recall no one was able to tell me what happened to the backpack. I do recall Mr. Poole telling me that the backpack contained vials with perfume inside and flyers related to his entertainment production company. The lab reports

6

indicate that the bottles in the backpack (which Mr. Poole told the police and me contained perfume) contained 44.52 grams of PCP. I did not file any pleadings related to the destruction of evidence. I am not sure what relevance the backpack itself had. The police report regarding the inventory of the backpack did not say anything about flyers, contracts, or music CDs. The report of Mr. Poole's statement immediately after his arrest does not mention that he said the backpack contained those items. I am not aware of any evidence other than Mr. Poole's statements to me that the backpack contained these items. I don't believe I would have had a meritorious motion to file regarding the destruction or loss of the backpack or how the destruction or loss of the backpack would have aided me in excluding from evidence the 44.52 grams of PCP that was found inside it.

(Doc. # 34-1). The Government states that even if Poole can show that the backpack and is contents were destroyed, he cannot show that his counsel's failure to challenge the destruction prejudiced his defense. The Government notes that Poole did not plead guilty to the April 17, 2012 incident that involved the backpack. The Government states that Poole would not have proceeded to trial on the April 17, 2012 incident if the backpack had been found, when instead he had the opportunity to enter into a plea agreement which completed avoided this incident. The Government also notes that the evidence of Poole's guilt was overwhelming. On April 17, 2012, the officers found 4 brown vials, 2 full of a liquid substance, 10 clear vials with a similar chemical smell and a prescription bottle with no label that contained 30 gel tablets inside. (PSR, ¶ 12). Additionally, the woman who officers found with Poole stated that "he had been selling PCP" for the last ten years and she witnessed him selling a gallon and a half that day. (PSR, ¶ 13). The Government argues that even if the music CD's, contracts and other items had been located, they would not have established Poole's innocence.

In reply, Poole argues that: 1) Cardarella shared his plans with the Government to use the backpack and its contents in his defense; 2) failed to challenge the

destruction of the backpack and its contents and 3) the Government acted improperly by failing to preserve the backpack and its contents. Poole alleges that he was denied due process and these actions impacted his decision to accept a plea agreement rather than go to trial.

It should be noted first that "an unconditional guilty plea ordinarily forfeits any attack on a criminal judgment beyond an attack on the jurisdiction of the court or the voluntariness of the plea." <u>United States v. Barnard</u>, No. 1:15-cr-60(LMB), 2017 WL 1393055 (E.D.Va. Apr. 14, 2017) (quoting <u>Tollett v. Henderson</u>, 411 U.S. 258, 267 (1973)). In <u>Barnard</u>, the Court noted that because the defendant has acknowledged on the record that he was fully satisfied with his counsel's representation, he was barred from claiming ineffective assistance of counsel. The Court noted, "Barnard's list of errors that Jones purportedly made in preparing for and trying the case, unrelated to the decision to plead guilty, are all foreclosed by Barnard's guilty plea, which included his statement that he was fully satisfied with Jones' conduct." <u>Id</u>. at *9.

Similarly, in the instant case, Poole also acknowledged that he was satisfied with Cardarella's representation:

Q. Okay. I next want to ask you about the advice and representation that Ms. Cardarella has provided you in this case. Are you satisfied with the advice and representation that she's provided to you?
A. Yes.
Q. Is there anything Ms. Cardarella has not done that you specifically asked her to do?
A. No.
Q. Standing here today, do you have any concerns about the advice and representation Ms. Cardarella has provided you?
A. No.
(Change of Plea Transcript, p. 9).

As the Court noted in <u>Barnard</u>, any "attacks on the sufficiency or veracity of the evidence admitted at trial, the Court's decisions regarding the missing witnesses, any

8

pre-plea prosecutorial misconduct, and any deprivation of a 'fair trial' are all forfeited." Id. at *9. Thus, the Court finds that Poole's claims regarding destruction of evidence are also barred by his plea agreement.

However, even if these claims were not barred by the plea agreement, the Court still finds that Poole's arguments would be meritless. In California v. Trombetta, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), the Court stated that the duty to preserve evidence:

> must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, . . .evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

Id. 467 U.S. at 488-89. In the instant case, the backpack and its contents were not expected to play a significant role in Poole's defense. Poole states that the contracts and music CD's in the backpack showed that he had a legitimate job which accounted for the money. However, the Court disagrees and does not find that the music CD's or contracts were exculpatory. Even if they had not been destroyed, they would not have demonstrated that Poole was innocent of the charges. Additionally, Poole could have introduced this evidence in other ways, such as providing duplicate copies of the contracts or CD's or testifying regarding the nature of his business. Thus, the Court finds that the Trombetta decision does not apply because the exculpatory nature of the CD's and contracts was not apparent. As the Court explained in Kelley v. United States, No. 16-4274-CV-C-BP, 2017 WL 1356335 (W.D.Mo. Apr. 10, 2017), if the exculpatory nature of the evidence is not apparent, then the Youngblood decision applies. In Arizona v. Youngblood, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281

9

(1988), the Supreme Court stated:

> the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant. . . .We therefore hold that *unless* a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.

Id. at 58 (emphasis added).  In the instant case, Poole has not shown or even suggested that there was bad faith on the part of the police in failing to preserve the backpack or its contents. In Kelley, the Court stated:

> the bad-faith requirement cannot be satisfied merely by advancing the speculative possibility that the material in question might be exculpatory. Bad faith requires 'official animus towards [the defendant] or a conscious effort to suppress exculpatory evidence.' Trombetta, 467 U.S. at 488. If bad faith could be established merely because evidence was destroyed, the requirement would be effectively eliminated.

Id. at *3. Therefore, the Court finds that there was no denial of Poole's due process rights. Accordingly, the Court finds that there was no prosecutorial misconduct regarding the backpack or its contents and counsel was not ineffective for failing to challenge the destruction of this evidence.

**C.  Ground Three – Production of Information from Poole's Phone**

Poole's case was scheduled for trial on October 6, 2014.  On September 26, 2014, the Government produced discovery which contained information retrieved from Poole's iPhone. Poole asserts that it was prosecutorial misconduct for the Government to produce the iPhone evidence so close to trial and if a timely notice of appeal had been filed, he could have raised this issue on direct appeal. Poole also asserts that Cardarella was ineffective because she did not notify him that she had filed a motion in limine.  The motion in limine was filed on October 2, 2014.  That same day, a Change of

10

Plea hearing was scheduled for the next day - October 3, 2014. Poole alleges that if Cardarella had advised him that she filed the motion in limine, he would have insisted on a ruling by the Court prior to considering the proposed plea agreement.

As noted above, "[i]t is well-settled that an unconditional guilty plea ordinarily forfeits any attack on a criminal judgment beyond an attack on the jurisdiction of the court or the voluntariness of the plea." Barnard, 2017 WL 1393055 at *9. So, any arguments regarding pre-plea prosecutorial misconduct would be forfeited. As would any ineffective assistance claims based on deficiencies that "were apparent to petitioner at the time [he] entered [his] plea." Gao v. United States, 375 F.Supp.2d 456, 464 (E.D.Va. 2005). Poole knew of the iPhone evidence before he entered into the plea agreement, thus any ineffective assistance claims related to the iPhone evidence and whether Cardarella informed him that she had filed a motion in limine would be precluded.

Even if these claims were not precluded, the Court finds that Poole has not shown that there is a reasonable probability that the outcome would have been different if the Government had disclosed the evidence earlier or he had known that Cardarella had filed a motion in limine. Additionally, Poole has not shown that even if he knew that a motion in limine had been filed, he would have rejected the plea offer that exposed him to substantially less time than if he had gone to trial. "[T]o establish prejudice for such a claim, a movant generally must show 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Prophet v. United States, No. 16-0831-CV-W-DGK-P, 2016 WL 8928311, *3 (W.D.Mo. Oct. 20, 2016) (quoting United States v. Frausto, 754 F.3d 640, 643 (8th

Cir. 2014)).

Cardarella states in her Supplemental Affidavit that:

> Regardless of whether the iphone evidence was excluded, I did not
> believe we could win this trial and receive a sentence of less than 8 years.
> Mr. Poole was charged with multiple drug counts and 924 (c) counts.  I did
> not believe we could win all counts if we went to trial.  . . . If Mr. Poole had
> been convicted as charged in the Superseding Indictment, he would have
> faced 55 years on the 924(c) counts, consecutive to whatever sentence he
> received on the drug counts. While I believed the phone evidence was
> damaging, I did not believe it was necessary for the government to obtain
> convictions on some or all of the counts charged. I had advised Mr. Poole
> that I did not believe we could win long before the phone evidence was
> disclosed. I believe that I did tell Mr. Poole that I had filed a motion in
> limine on his behalf.

(Cardarella Supp. Affid. Doc. 34-1).

Poole argues that there is a dispute of fact regarding whether Cardarella told Poole

that she had filed a motion in limine regarding the evidence and thus a hearing is

warranted on this issue.  However, the Court disagrees.  Poole never alleges that he did

not know about the iPhone evidence.  He only claims that he was unaware that a

motion in limine had been filed.  But, Poole could certainly have asked Cardarella to file

a motion in limine to exclude the evidence before entering into the Plea Agreement.

Even if it is assumed that Cardarella failed to inform Poole that she had filed the motion

in limine, the Court does not find that this is deficient.  Poole obviously knew of the

evidence and could have asked Cardarella if she was planning on filing a motion in

limine.  Additionally, Poole has failed to show that he was prejudiced by Cardarella's

failure to disclose the fact that she had filed the motion in limine, because he has not

shown that even if he had known of the motion in limine, he would have rejected the

plea, gone to trial and risked receiving substantially more time than that offered by the

plea. Accordingly, the Court finds that this claim is precluded by Poole's guilty plea and

even if considered has no merit.

### D. Ground Four – Withdrawal of Objections to PSR – Failure to Advise of Consequences

Poole alleges that the Prosecuting Attorney improperly pressured him to withdraw all of his pending objections to the PSR at the sentencing hearing and that Cardarella was ineffective in failing to advise him of the collateral consequences of allowing the base offense level and criminal history categories in the PSR to remain unchallenged. The PSR found the base offense level to be 24, enhancements were added for possession of a firearm (+2) and for use of violence (+2). With credit for acceptance of responsibility, (-3), the total offense level was 25. Poole believed that under the Plea Agreement, the base offense level was a 20 and after credit for acceptance of responsibility, his total offense level would be 17. Poole also raised a number of objections to the facts used to support the base offense level. Poole states that the Prosecutor conveyed to Cardarella that if he pursued all of his objections to the PSR, he would not be considered for a reduced sentence based on cooperation. Poole states that he felt pressured to withdraw his objections in order to maintain the option of receiving a reduced sentence. Poole states that the combination of the higher base offense level and the higher criminal history category resulted in him being assigned to a medium level facility within the Bureau of Prisons. Poole states that Cardarella was ineffective for failing to advise him of these consequences.

The Court finds that this claim is flatly contradicted by the transcript of the sentencing hearing. At the hearing, Cardarella explained:

Ms. Cardarella: Sure. Judge, so, you know, I suppose once upon a time, I probably would not have made any objections to a PSI with an 11 (c)(1)(c), but over the years I have seen for various reasons review of

13

cases and objections that were made, of course, you know, that the issue was waived. I don't know that Mr. Poole's going to have any of those issues, but it's really my practice to try to make that PSI as accurate as I can even when it is a binding plea agreement. So that's why we did make the objections. . . .So just out of an abundance of caution and so that the court has the most clear picture when deciding whether or not to accept the binding plea agreement, I make all the objections that my client has asked me to make if I think that they're well founded.

(Sentencing Transcript, pp. 3-4). Cardarella then proceeded to discuss the objections that Poole had to the PSR. Government counsel responded that this is a binding plea agreement and he did not come prepared with witnesses to testify to disputed issues of fact. Cardarella then proceeded to discuss other objections to incidents which were described in the PSR and which allegations Poole denied. After a discussion off the record, the Court stated, "I was saying this is, again, the kind of objection that would normally require some testimonial evidence, and I'm not prepared to rule one way or the other on that without that." Cardarella then had an off the record discussion with Poole. She then stated to the Court:

Ms. Cardarella: Judge, we would like to move forward today with the sentencing hearing, and inasmuch as the objections to the drug quantities don't impact – if the court is inclined to accept the binding plea agreement, those objections don't impact the binding plea agreement because the sentence doesn't change, we can withdraw the objections that are related to drug quantities. I am only asking the court to rule, if you don't mind – if you can do so today. Otherwise, I will withdraw the objection for the same reason, it doesn't impact the guidelines. I am worried about that enhancement for the use of violence because that might impact his security level when he goes to custody. It doesn't impact his sentence today, but it might impact his security level. But if the court says, Well, I want evidence, then we'll withdraw that, Judge. We're not that worried about it.

(Sentencing Transcript, pp. 9-10).

The Court stated:

As long as the record is clear because I can see, as I have seen over a

14

period of time, where the defendant comes back later on and says, I didn't really agree to this, you know, the records's not supportive of this, you know, we want to set aside this binding plea agreement, and the circuit court could easily set that aside. I'm not going to sit here knowing that that could happen and agree to do something like that, quite frankly, Ms. Cardarella, and whether it affects the binding plea or not remains to be seen in this challenge. . . .

Cardarella: Well, I mean Judge, I guess what I can say is Mr. Poole is standing right next to me. As you know, I just took a recess to talk to him. He's standing right next to me. He hears what I'm saying and agrees with me that we can withdraw his objections because they don't impact the sentence today.

The Court: All I can say to Mr. Poole is if he wants to go forward with this binding plea agreement, then he needs to withdraw all these objections and we go forward on that basis or we don't go forward at all.

Cardarella: Okay. Then we go forward today, Judge, and we'll withdraw all the objections.

The Court: Okay. I don't - -Mr. Poole, I hope you understand what we're talking about here. I don't want you to later say you're confused about this. You and your lawyer have negotiated with the government here for a term certain with regard to your plea and the crimes for which you were charged under this indictment. I have looked at the presentence report, and I tend to believe there's support for that position, and I was willing to proceed on the basis of the recommendation of your counsel. If you for some reason don't feel comfortable doing this, then you ought not do it, you know, and you can regroup and go back and try to get something better or don't get anything at all and go to trial on these issues. That's your prerogative, but I'm not going to allow you to have it both ways. That's what I think you want here now. So you either have to accept the agreement, as was agreed to by you and your counsel and the government, and withdraw these objections, or we go forward at a later time on the basis of these objections if the government's willing to agree to withdraw and go forward on another plea agreement, which is likely not to occur. And if that doesn't occur, then the other option is to go to trial and let a jury determine whether you should serve that time or not. You understand what the options are here?

Poole: Yes, Your Honor.

The Court: Do you need to talk to your counsel for a moment?

The Defendant: Is the one issue about the custody level, you know, I

know that it's going to affect that.

The Court: It may affect that and I have no – I cannot sustain that objection because I don't know the nuances of what happened at that time. That's a strong objection. I acknowledge that. But I can't just say based upon what I see in this presentence report, objection one way or the other. You know, I need to have more information.

The Defendant: We can move forward. I'm fine with that.

The Court: Okay. If we're moving forward then, I've already told you what my position is; that I would agree to the recommendation as relates to the sentencing in these two counts because I think under the circumstances, they are reasonable and not greater than necessary. So if we're going to go forward on that, then, Mr. Poole, do you have anything else you want to say on this subject?

The Defendant: No, Your Honor.

(Sentencing Transcript, pp. 10-13).

A defendant challenging a guilty plea must show the plea does not represent a voluntary and intelligent choice among the alternative courses of action open to the defendant. . . .When a defendant pleads guilty and later alleges that he did not make the plea voluntarily and intelligently, [he] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

Brown v. U.S., 4:13CV2204RWS, 2015 WL 1542102, *6 (E.D.Mo. Apr. 7, 2015)(internal

citations and quotations omitted). "The binding nature of a plea of guilty thus depends

on the fact that it is made 'voluntarily after proper advice' and with an understanding of

the consequences." United States v. Frook, 616 F.3d 773, 774 (8th Cir.), cert. denied,

562 U.S. 1096 (2010)(quoting Kercheval v. United States, 274 U.S. 220, 223-24, 47

S.Ct. 582, 71 L.Ed 1009 (1927)).  "Solemn declarations in open court carry a strong

presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621,1629, 52

L.Ed.2d 136 (1977). "A defendant's later conclusory claim that he did not understand

what was going on during a plea hearing rings hollow. . . .The plea of guilty is a solemn

act not to be disregarded because of belated misgivings about [its] wisdom." <u>Khoi Van</u> <u>Ha v. U.S.</u>, No. C 11-4012-MWB, 2011 WL 4600707, *6 (N.D.Iowa Oct. 3, 2011)(internal citations and quotations omitted).

In the instant case, at the Change of Plea Hearing, the Court read the charge that Poole was pleading guilty to. The Court explained the potential range of punishment for that charge.  The Court specifically confirmed that Poole understood the charge he was pleading to and the range of punishment that he faced.  The Court further confirmed that Poole had had enough time to talk to Cardarella about his decision to plead guilty and that he was satisfied with her conduct.  The Court confirmed that Poole had read and understood all the terms of the Plea Agreement and that he had enough time to discuss it with Cardarella.  The Court also went over all of the rights that Poole was giving up by deciding to plead guilty.

Additionally, at the Sentencing hearing, Poole had the opportunity to discuss the issue of the objections to the PSR with his counsel during the hearing and the Court specifically questioned Poole whether he understood what the attorneys were discussing.  The Court clearly gave Poole the option to either challenge the PSR and proceed at a later time or withdraw his objections and proceed with the binding plea agreement.  The Court also explained that he could withdraw from the agreement and instead proceed to trial if he wished. Poole has offered nothing other than his statement that he felt pressured to withdraw his objections in order to maintain the option of receiving a reduced sentence.   But, as the Court explained, [t]hat's your prerogative, but I'm not going to allow you to have it both ways. That's what I think you want here now. So you either have to accept the agreement, as was agreed to by you and your

Case 4:15-cv-00985-FJG   Document 40   Filed 07/27/17   Page 17 of 22

counsel and the government, and withdraw these objections, or we go forward at a later time on the basis of these objections if the government's willing to agree to withdraw and go forward on another plea agreement, which is likely not to occur." The Court finds that the record clearly refutes Poole's claims that the Prosecuting Attorney pressured him into accepting the plea agreement or that his counsel was ineffective for failing to advise him of what the consequences of accepting the plea agreement were. Poole was asked and confirmed multiple times that he understood the charges that he was pleading guilty to and the consequences of that decision.  Poole also confirmed that Cardarella did everything that she asked him to do and nothing which he had instructed her not to do.  The Court finds that Poole has failed to show that his plea was made involuntarily or without an understanding of the elements that he was pleading to or the consequences of that decision.  Accordingly, the Court hereby **DENIES** Poole's claim for relief on this ground.

**E.  Ground Five – Failure to Request  Daubert Hearing**

Poole argues that Cardarella should have requested a Daubert determination prior to the suppression hearing because the officers who testified about the audio/video capabilities and operation of the dash cam purported to be experts on these matters. Poole argues that a Daubert challenge would have impacted the suppression hearing and led to a different outcome. Poole also believes that Cardarella was ineffective because she did not negotiate for the conditional right to appeal the suppression motion rulings in his plea agreement.

The Court notes first that this claim is precluded because it does not challenge the jurisdiction of the Court or the voluntariness of the plea.  United States v.  Barnard,

2017 WL 1393055 at *9.  However, even if this claim were not precluded, the Court

finds that it is meritless because neither of the officers who testified were experts.  At

the suppression hearing on July 1, 2014, Officer Nelson testified that during his

interaction with Poole his microphone quit working and some of the audio was not

recorded.  Officer Nelson explained that he did not know what happened. (Crim. Doc. #

112, p. 3).  Officer Feagons testified that he worked in the digital technology section

which handles in-car videos.  He explained how the dash cam systems operate and

"that sometimes the microphones do not work properly." (Crim. Doc. # 112, p. 4).

Officer Feagons explained that "there was a malfunction in at least one of the

microphones" but he "did not know what caused the microphones to malfunction on that

date." (Crim. Doc. # 112, p. 4).

The Government argues that this claim fails because Poole had not stated

specifically how he would have challenged the officers' testimony under Daubert and he

cannot demonstrate prejudice.  Additionally, the Government notes that neither Officer

Nelson or Feagons were called as expert witnesses, thus making Daubert inapplicable.

Rather, each officer was called as a fact witness who testified as to their personal

experiences. Thus, the Government argues that because a Daubert challenge would

have been meritless, there is no ineffective assistance claim for failing to raise this

issue.  Additionally, the Government argues that Poole did not receive ineffective

assistance when he did not receive a conditional plea agreement, because he had no

right to be offered a plea.  The Court agrees and finds that there is no merit to this

claim.  The Officers were not called as expert witnesses at the suppression hearing, so

any Daubert challenge was meritless.  Cardarella was not ineffective for failing to raise

19

a meritless arguments. Additionally, the Court also rejects Poole's claim that Cardarella was ineffective for failing to negotiate a conditional right to appeal the suppression motion rulings in his plea agreement. Poole has no right to be offered a plea. Thus, counsel is not ineffective for failing to negotiate something to which he was not entitled. Accordingly, the Court **DENIES** Poole's claim for relief on this ground.

For the reasons stated above, the Court hereby **DENIES** Poole's Motion to Vacate, Set Aside or Correct His Sentence on Grounds 2-5. An evidentiary hearing will be held in this matter only on **Ground One – Failure to File a Notice of Appeal**. Poole will be denied a motion for certificate of appealability on Grounds Two-Five. Under 28 U.S.C. § 2253(c)(2), "[a] certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right." The Court finds that the issues raised by Poole in Grounds Two - Five do not meet this criteria.

## F. Motion for Termination of Present Counsel and Request for Appointment of New Counsel/ Motion for Confidential Legal Visitation and Return of Property Pursuant to Fed.R.Civ.P. 41(g)

Poole states that he is requesting that the Court terminate his present counsel and appoint new counsel because his current counsel failed to secure his attorney client privacy after becoming aware that attorney client meetings were being recorded and made available to the USAO and failing to address this issue of due process with the Court. Poole also states that on August 5, 2016 he learned that confidential and privileged communications between attorneys and clients housed at CCA in Leavenworth have been recorded by CCA staff and provided to the United States Attorney's office upon request. Poole states that these communications have been

used by the government in pending litigation and have been disclosed as discovery to other defendants and counsel. Poole states "I do not yet know whether or when audio recordings were made. I understand that all legal calls are also recorded, and the content of those calls are also available to the USAO. These recordings, and government access to these recordings, violate my rights to confidential and privileged communication with counsel." (Motion for Confidential Legal Visitation, Doc. # 33,p. 3).

The Court is aware of the issues and concerns related to the unauthorized monitoring and recording of communications between attorneys and clients housed at CCA. <u>See</u> <u>USA v. Black et al</u>, 2:16-mj-08080-TJJ (D.Kan.). The Court is aware that a Special Master has been appointed by the Court in that case and that the investigation is on-going. However, because the investigation is continuing and because Poole has not submitted any specific information that conversations with his counsel were recorded or video-taped, the Court is unable to issue a ruling on his motion at this time. The Court also believes that Poole has not offered any valid reason for replacing his current counsel, Ms. Blegen. Accordingly, the Court hereby **PROVISIONALLY DENIES** Poole's Motion to Terminate Present Counsel and Request for Appointment of New Counsel (Doc. # 30). The Court also **PROVISIONALLY DENIES** Poole' Motion for Fed.R.Crim.P.16(E) Discovery for Confidential Legal Visitation and Return of Property (Doc. # 33). The Court is confident that Poole's present counsel will investigate any meritorious issues related to these claims and if necessary will bring these matters to the attention of the Court.

**G. Pro Se Motion to Vacate/ Pro Se Motion for Summary Judgment**

In his Pro Se Motion to Vacate, Poole states that he is asking the Court to issue

affirmative relief in his case.  Similarly, in his pro se Motion for Summary Judgment, Poole is asking for a ruling on his §2255 motion and also on his previously filed motions. As the Court has now ruled in part on Poole's Amended §2255 Motion, the Court hereby **DENIES AS MOOT** Poole's Pro Se Motion to Vacate (Doc. # 38) and Pro Se Motion for Summary Judgment (Doc. # 39).

## IV.    CONCLUSION

Accordingly, for the reasons stated above, the Court will hold an evidentiary hearing on Ground One – Failure to File Notice of Appeal raised in Poole's §2255 Motion.  All other grounds raised in the Amended §2255 motion are hereby **DENIED**. An evidentiary hearing will be held in Courtroom 7C on **August 9, 2017 at 1:00 p.m.** Poole's Pro Se Motion to Terminate Counsel (Doc. # 30) and Pro-Se Motion for Discovery (Doc. # 33) are hereby **PROVISIONALLY DENIED**; Poole's Motion for Extension of Time to File Reply (Doc. # 35) is **GRANTED**; Poole's Pro Se Motion to Vacate (Doc. # 38) and Pro-Se Motion for Summary Judgment (Doc. # 39) are hereby **DENIED AS MOOT**.

Date:  _July 27, 2017_                              **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri                              Fernando J. Gaitan, Jr.
                                                   United States District Judge